UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SADIKA HOKIC,                        )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )        No. 4:19 CV 1850 CDP
                                     )
ANDREW SAUL,                         )
Commissioner of Social Security,     )
                                     )
        Defendant.                   )

## MEMORANDUM AND ORDER

Plaintiff Sadika Hokic brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of the Commissioner's decision denying her application for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the

Act, 42 U.S.C. §§ 1381 et seq.  Sections 205(g)  and 1631(c)(3) of the Act, 42

U.S.C. §§ 405(g) and 1383(c)(3), provide for judicial review of a final decision of

the Commissioner.  Because the Commissioner's final decision is supported by

substantial evidence on the record as a whole, I will affirm the decision of the

Commissioner.

### Procedural History

Plaintiff was born in 1967 and alleges she became disabled beginning

October 12, 2012, because of limited use of right hand, prior surgery on lungs,

nerve damage, pain in legs, back pain, and depression.  (Tr. 243).  At the time of

her administrative hearing, plaintiff amended her onset date to September 19,

2015.

Plaintiff's application was initially denied on April 21, 2016.  After a

hearing before an ALJ on January 31, 2018, the ALJ issued a decision denying

benefits on August 16, 2018.  On April 30, 2019, the Appeals Council denied

plaintiff's request for review.  The ALJ's decision is thus the final decision of the

Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, plaintiff contends that the ALJ erred in his

assessment of the medical evidence and in discounting plaintiff's subjective

complaints of pain.  Plaintiff asks that I reverse the Commissioner's final decision

and remand the matter for further evaluation.  For the reasons that follow, I will

affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt

plaintiff's recitation of facts set forth in her Statement of Material Facts (ECF #19-

1) as they are admitted (with additional facts) by the Commissioner (ECF #20-1).  I

also adopt the additional facts set forth in the Commissioner's Statement of

Additional Material Facts (ECF #20-2), as they are not contested by plaintiff.

Together, these statements provide a fair and accurate description of the relevant

record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th

Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and

functional restrictions).[1]  When an ALJ gives good reasons for the findings, the

court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696

(8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full

and fair record in the non-adversarial administrative proceeding.  *Hildebrand v.*

*Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In his written decision, the ALJ found that plaintiff had not engaged in

substantial gainful activity since the alleged amended onset date of September 19,

2016.  The ALJ found that plaintiff had the following severe impairments:

scoliosis, chronic post-thoracotomy pain, right ulnar nerve entrapment, a

depressive disorder, and an anxiety disorder.  The ALJ also found that plaintiff had

the following non-severe impairments: hypothyroidism, hypertension,

hyperlipidemia, and hyperinflation of the lungs.  The ALJ determined that

plaintiff's impairments or combination of impairments did not meet or medically

equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15.)

---

[1] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.  However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 2020 WL 4375088, at *5, n.6 (8th Cir. Jul. 31, 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

The ALJ found plaintiff to have the residual functional capacity (RFC) to perform

light work with the following limitations:

> She can never kneel, crouch, crawl, or climb ropes, ladders or
> scaffolds, but she can occasionally stoop and climb ramps and
> frequently handle, finger, and feel with the right hand.  She can only
> occasionally reach overhead with her upper right extremity.  She must
> avoid concentrated exposure to wetness, humidity, pulmonary
> irritants, and extreme heat or cold, and all exposure to moving
> machinery and unprotected heights.  The claimant is also precluded
> from interacting with the public due to her limited ability to speak
> English.  She can no more than occasionally [handle] decision-making
> or judgment or changes in the work setting, and no pace-production
> work.

(Tr. 16.)  The ALJ relied upon vocational expert testimony to support a conclusion

that plaintiff could not perform her past relevant work as a housekeeper  (Tr. 19.),

but that there were significant jobs in the economy of cleaner, hand packer, or

assembler production worker that plaintiff could perform.  The ALJ therefore

found plaintiff not to be disabled.  (Tr. 20.)

Plaintiff claims that this decision is not supported by substantial evidence

because the ALJ improperly assessed medical evidence when formulating her RFC

and erroneously discounted her subjective allegations of pain.

C.    Medical Evidence

Plaintiff first argues that the ALJ erred when formulating the mental portion

of her RFC because he failed to afford controlling weight to the opinion of her

treating psychiatrist, Sophia Grewal, M.D.  Dr. Grewal began treating plaintiff in

February of 2015 for major depressive disorder and generalized anxiety disorder. On February 27, 2017, Dr. Grewal completed a mental residual functional capacity questionnaire in connection with plaintiff's application for benefits. (Tr. 367.) Dr. Grewal stated that that plaintiff had anhedonia, feelings of guilt, generalized anxiety, somatization, memory impairment, easy distractibility, motor tension, mood disturbances, persistent disturbances, moods, emotions, and manic and depressive syndromes. (Tr. 368.) Dr. Grewal opined that plaintiff was unable to meet competitive standards in the areas of working in coordination with others, making simple work-related decisions, completing a normal workday without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers without distracting them, responding appropriately to changes in a routine work setting, and dealing with normal work stress. (Tr. 369.) However, Dr. Grewal believed that plaintiff had a limited but satisfactory ability to remember work-like procedures, understand and remember very short and simple instructions, and sustain an ordinary routine without special supervision. (Tr. 369.) Dr. Grewal opined that plaintiff was seriously limited but not precluded from understanding and remembering detailed instructions, setting realistic goals and making plans independently, and dealing with the stress of semiskilled and skilled

work.  (Tr. 370.)  Dr. Grewal believed that plaintiff's ability to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation were limited but satisfactory.  (Tr. 370.)  Dr. Grewal opined that plaintiff's psychiatric condition made plaintiff more sensitive to pain.  (Tr. 370-71.)  She believed plaintiff's impairments would cause plaintiff to miss four or more days of work per month.  (Tr. 371.)  When asked to cite medical/clinical findings supporting her opinions, Dr. Grewal merely stated that plaintiff "will not be able to sustain concentration/attention for long periods" and that she will not be able to "perform consistently."  (Tr. 369-70.)  She provided no diagnostic findings in support of her opinion, and she provided no onset date of plaintiff's limitations. (Tr. 371.)

Plaintiff contends that the ALJ improperly discounted Dr. Grewal's opinion in his RFC determination in favor of the opinion rendered by Steven Akeson, Psy.D., a non-examining agency psychologist, on April 21, 2016.  Dr. Akeson opined that plaintiff was no more than mildly limited in any of the "paragraph B" categories.  (Tr. 105.)  He believed that plaintiff faced moderate limitations with respect to understanding, remembering, and carrying out detailed instructions, and with public interactions, but was not significantly limited in any other psychological respects.  (Tr. 110-11.)  Dr. Akeson concluded that plaintiff may be

9

limited in public interaction due to her limited ability to speak English,[2] but that she had the ability to acquire and retain at least simple, and possibly moderately-complex, instructions, and to sustain concentration and persistence with at least simple repetitive tasks and possibly moderately-complex tasks.  (Tr. 111.)

Plaintiff essentially argues that I should reweigh the medical evidence of plaintiff's mental limitations considered by the ALJ in his determination of plaintiff's RFC.  That is not my role.  *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).  As discussed below, the ALJ properly factored into his RFC determination an assessment of plaintiff's credibility and objective medical findings of record, including the diagnostic imaging results and physical examination findings, which do not support plaintiff's claimed limitations.  In so doing, he did not substantially err.

RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."  *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001).  The ALJ must determine a claimant's RFC

---

[2] Plaintiff moved to the United States from Bosnia in 1999 and became a U.S. citizen.  (Tr. 39.) She also has a driver's license.  (Tr. 39.)  At the hearing, plaintiff testified that she could understand the ALJ and that she can read English but "doesn't understand a lot."  (Tr. 40-41.) Plaintiff stated that she cannot make notes in English.  (Tr. 40.)

based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The record must include some medical evidence that supports the RFC. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) (internal citation omitted).

An ALJ is required to explain in his decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. § 404.1527(c)(2)(ii). The Regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. § 404.1527(c)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.; see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most
> able to provide a detailed, longitudinal picture of [a claimant's]
> medical impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective medical
> findings alone or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord that and any other medical opinion of record, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for her findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.  20 C.F.R. § 404.1527(c), (e).  Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion.  *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005).  The Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion."  20 C.F.R. § 404.1527(c)(2).

Here, the ALJ properly formulated plaintiff's RFC only after evaluating her credibility and discussing the relevant evidence, including her testimony, the medical evidence, including the opinions of Dr. Grewal, Dr. Akeson, and plaintiff's other treating physicians, and her daily activities.  After consideration of

12

all this evidence, the ALJ concluded that plaintiff retained the capacity to perform

light work, with modifications tailored to her credible limitations.  In so doing, he

did not substantially err.

Plaintiff does not argue that the ALJ disregarded the opinion of Dr. Grewal.

Instead, she argues that the ALJ failed to explain why he gave only "partial

weight" to Dr. Grewal's findings.  Plaintiff's argument ignores the fact that the

ALJ concluded that "the severity of the claimant's depression and anxiety, as set

forth in Dr. Grewal's Medical Source Statement, are not all supported by the

record" only after detailing Dr. Grewal's medical records as well as her mental

RFC assessment in the immediately preceding paragraphs. (Tr. 18-19.)  Those

paragraphs make clear the inconsistency between Dr. Grewal's treatment notes and

the extreme limitations described in the RFC assessment.  For that reason, the ALJ

ascribed only "partial weight" to Dr. Grewal's findings.  The ALJ also assigned

only "partial weight" to Dr. Akeson's findings "due to additional records that were

later provided."  (Tr. 19.)  Because the ALJ's reasons for discounting these

opinions are supported by substantial evidence on the record as a whole, I defer to

that determination.

In discounting Dr. Grewal' opinions, the ALJ noted that record did not

support the degree of limitation indicated in the medical source statement, a

finding which is supported by substantial evidence on the record as a whole.  An

ALJ may discount a treating physician's opinion where it is not supported by objective medical evidence.  *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018).  The ALJ "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (internal quotation marks and citations omitted); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (declining "to give controlling weight to the treating physician's opinion because the treating physician's notes were inconsistent with her . . . assessment").

Here, Dr. Grewal's treatment notes, which were summarized by the ALJ, do not support the degree of limitation claimed in the medical source statement. During plaintiff's mental status exam on March 16, 2015, Dr. Grewal observed plaintiff to have appropriate appearance, a cooperative behavior, she was oriented, had purposeful psychomotor activity, appropriate mood and feelings, clear speech, anxious affect, no hallucinations, delusions, or suicidal/homicidal thoughts, no changes in weight, adequate sleep, energy, and appetite, a logical flow of thought with adequate attention span and concentration, no memory difficulties, an average intellect, and adequate insight and judgment.  (Tr. 359.)   Her prognosis was good. (Tr. 359.)   Dr. Grewal's treatment notes for plaintiff's next visit on October 5,

14

2015 do not reflect a mental status examination.  (Tr. 360.)  She lists plaintiff's

medical diagnosis as major depressive disorder with the clinical severity scale

rating of 2 (borderline mentally ill), with 1 being normal.  (Tr. 360.)  Plaintiff's

prescribed psychiatric medications of  Cymbalta and Remeron are noted.  (Tr.

360.)  Plaintiff's prognosis is listed as good.  (Tr. 360.)  Plaintiff's next visit with

Dr. Grewal was November 30, 2015, but treatment notes contain no information

other than a list of plaintiff's medications.  (Tr. 361.)  Treatment notes from

plaintiff's next visit on January 20, 2016 are equally brief.  (Tr. 362.)  On her next

visit on May 23, 2016,  plaintiff reported being out of her medication, separated,

and unable to pay her bills.  (Tr. 363.)  Plaintiff's mental status examination

revealed appropriate appearance, cooperative behavior, normal orientation and

psychomotor activity, anxious, sad, angry, worried, tearful affect, no delusions but

death wishes, decreased sleep with day napping, decreased appetite, logical flow of

thought, adequate attention span and concentration, average intellect, and adequate

insight and judgment.  (Tr. 363.)  Dr. Grewal rated the severity of plaintiff's

symptoms a 4 (moderately ill) on the clinical impression severity scale.  (Tr. 363.)

Plaintiff's prognosis remained good.  (Tr. 363.)   Plaintiff's next visit was June 27,

2016.  (Tr. 364.)  Plaintiff reported that she continued to be depressed because she

could not work.  (Tr. 364.)  Plaintiff's diagnosis was listed as major depressive

disorder/bipolar disorder.  (Tr. 364.)  The only notation made on plaintiff's mental

status exam was that her behavior was relaxed and charming.  (Tr. 364.)  She was assessed a clinical impression severity scale rating of 3 (mildly ill).  (Tr. 364.)  Her prognosis was good.  (Tr. 364.)

On August 29, 2016, plaintiff's medical diagnosis was major depressive order and bipolar disorder.  (Tr. 623.)  Dr. Grewal's mental status exam of plaintiff revealed normal appearance and behavior, a logical flow of thought, adequate insight and judgment, and average intellect with decreased appetite, energy, and sleep.  (Tr. 623.)  She observed remote memory difficulties.  (Tr. 623.)  Dr. Grewal rated plaintiff a 3 (mildly ill) on the clinical impression severity scale and viewed her prognosis as good.  (Tr. 623.)  Plaintiff was seen again by Dr. Grewal on December 12, 2016, but the treatment notes are blank.  (Tr. 624).  Plaintiff indicated that she was "doing ok" during her visit on January 30, 2017.  (Tr. 625.)  Plaintiff's prognosis of good and her rating of 3 on the clinical impression severity scale remained unchanged.  (Tr. 625.)  The treatment notes from plaintiff's February 27, 2017 indicate an unchanged clinical impression severity scale rating and are otherwise blank.  (Tr. 626.)  On May 1, 2017, Dr. Grewal's medical diagnosis of plaintiff was major depressive disorder, generalized anxiety disorder, and rule out bipolar disorder.  (Tr. 627.)  Plaintiff's clinical impression severity scale rating remained a 3 (mildly ill) and her prognosis remained good.  (Tr. 627.)  The same results are indicated on treatment notes from plaintiff's August 21, 2017

visit.  (Tr. 628.)  On November 27, 2017, Dr. Grewal indicated that plaintiff's

disability hearing would take place in January.  (Tr. 629.)  Other than a notation

regarding plaintiff's medication refills, the treatment notes are otherwise blank.

(Tr. 629.)

These rather benign findings do not support the extreme limitations found in

Dr. Grewal's February 27, 2017, mental residual functional capacity questionnaire.

For example, in the RFC questionnaire Dr. Grewal stated that plaintiff had motor

tension but she never indicated anything other than purposeful psychomotor

activity during plaintiff's mental status exams.  On one occasion only Dr. Grewal

noted that plaintiff had memory difficulties.  (Tr. 623.)  In every other mental

status exam, plaintiff was observed to have no memory difficulties, and she was

always observed to have adequate attention span and concentration, average

intellect, and adequate insight and judgment.  Despite these essentially normal

findings, Dr. Grewal opined that plaintiff was unable to meet competitive standards

in the areas of working in coordination with others, making simple work-related

decisions, and accepting instructions and responding appropriately to criticism

from supervisors.  Dr. Grewal further opined that plaintiff was seriously limited

but not precluded from understanding and remembering detailed instructions,

setting realistic goals and making plans independently, limitations that are not

supported by her treatment notes or by any diagnostic tests or findings.  At all

17

times, Dr. Grewal rated plaintiff's prognosis as good, and the only time she assessed plaintiff as moderately ill was when plaintiff reported being out of her medication and separated.  But by her next visit, plaintiff was relaxed and charming and rated as mildly ill by Dr. Grewal.  Every other visit, Dr. Grewal rated plaintiff as either borderline or mildly ill.  When asked in the medical source statement to "include the medical/clinical findings that support [her] assessment," Dr. Grewal did not cite to any diagnostic tests or other objective findings that would support her opinion.  Instead she merely wrote that "patient will not be able to sustain concentration/attention for long periods" and "patient due to her anxiety depression will not be able to perform consistently."

The ALJ may properly discount a treating physician's medical source statement where the doctor fails to provide any diagnostic test results or other support for perfunctory answers regarding a claimant's limitations.  *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (affirming an ALJ's decision to discount a treating physician's assessment as of "little evidentiary value" because it consisted "of nothing more than vague, conclusory statements – checked boxes, circled answers, and brief fill-in-the-blank responses" which cited "no medical evidence and provide[d] little to no elaboration").  Here, Dr. Grewal failed to support her opinion with detailed findings or little more than perfunctory answers as to plaintiff's limitations.

18

Dr. Grewal's opinions regarding plaintiff's mental limitations are also not supported by the medical evidence as a whole, which revealed essentially normal results.  In his decision, the ALJ noted that plaintiff was also being treated by Emir Keric, M.D., for her depression.  During a visit on September 23, 2015, plaintiff was well groomed, had normal eye contact, with no suicidal or homicidal ideation. (Tr. 300.)  Plaintiff was observed to have an anxious mood and affect and was encouraged to keep her appointments with Dr. Grewal.  (Tr. 301.)  Plaintiff was prescribed Cymbalta and Remeron.  (Tr. 301.)   During her visit on June 6, 2016, Dr. Keric noted plaintiff's normal psychiatric status.  (Tr. 437.)  Plaintiff was noted to have major depressive disorder, single episode-unspecified.  (Tr. 438.)   She was not taking Cymbalta but continued taking Remeron.  (Tr. 437.)  Plaintiff was also observed to have normal psychiatric status, with normal orientation, speech patterns, insight and judgment, by treating physician Azhar Kothawala, M.D., during visits on September 25, 2015, November 6, 2015, and May 26, 206.  (Tr. 319, 331, 507.)

For these reasons, the ALJ did not substantially err when he assigned Dr. Grewal's opinion regarding plaintiff's mental limitations only partial weight as inconsistent with other substantial evidence of record.  *See*, *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing *Papesh v. Colvin*,

786 F.3d 1126, 1132 (8th Cir. 2015)); *Cline v. Colvin*, 771 F.3d at 1103 (ALJ gave little weight to treating physician's opinion that was inconsistent with treatment records and objective medical evidence, and not supported by physician's own exams and test results).

To the extent plaintiff is challenging the ALJ's failure to precisely identify how "the severity of the claimant's depression and anxiety, as set forth in Dr. Grewal's Medical Source Statement, are not all supported by the record," her argument fails.   Here, the ALJ detailed plaintiff's mental condition at step two of the sequential evaluation process and when assessing her RFC he identified the "objective medical evidence of record which fails to support a finding of disability," (Tr. 17.).   This discussion included reference to all the medical evidence of plaintiff's mental limitations as set out above.   After describing the medical evidence of record, the ALJ summarized Dr. Grewal's medical source statement, which clearly includes limitations not indicated in any of plaintiff's medical records.   After discussing all of this evidence, the ALJ concluded that Dr. Grewal's opinion is entitled to only "partial weight" as not fully supported by the record.   While it is true that the ALJ could have more fully elaborated on the reasons why Dr. Grewal's opinion is not supported by plaintiff's medical evidence as a whole, any failure to address the inconsistent evidence in more detail amounts to, at most, "an arguable deficiency in opinion-writing technique [which] does not

require [the Court] to set aside an administrative finding when that deficiency had no bearing on the outcome." *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (internal quotation marks and citation omitted). That is particularly true here where the ALJ specifically reviewed Dr. Grewal's treatment notes which failed to support her own opinion and given Dr. Grewal's failure to support her own opinion with any objective findings or test results. For these reasons, the ALJ did not substantially err in discounting Dr. Grewal's opinion.

Plaintiff also challenges the ALJ's reliance on the opinion of Dr. Akeson, a non-examining physician, because it was not based on the "full record." While it is true that Dr. Akeson issued his opinion in April 2016 (about ten months before Dr. Grewal issued her opinion), he assessed plaintiff's condition during the relevant period and therefore the ALJ was permitted to consider it. An ALJ may afford significant weight to the opinion of a non-examining physician where it is consistent with the evidence as a whole. *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019). Moreover, the ALJ assigned only "partial weight" to Dr. Akeson's opinion due to additional records that were later provided." (Tr. 19.) Therefore, in evaluating the weight to be afforded Dr. Akeson's opinion, the ALJ properly reviewed the medical evidence as a whole, including the evidence submitted after his opinion was rendered. Here, the ALJ did not substantially err when he assigned partial weight to Dr. Akeson's opinions

with regard to plaintiff's mental limitations.

Once again, plaintiff complains that the ALJ's decision does not specify which parts of Dr. Akeson's opinion were afforded weight and why. Plaintiff also argues that the ALJ merely adopted Dr. Akeson's opinion wholesale. Although the ALJ could have more fully elaborated on the reasons why Dr. Akeson's opinion is given only partial weight, any failure to address the evidence in greater detail amounts to, at most, an arguable deficiency in opinion writing that does not require remand where substantial evidence on the whole supports the ALJ's RFC determination. As discussed above, the ALJ summarized all of plaintiff's medical evidence of record relating to her mental limitations before determining the appropriate weight to be afforded Dr. Akeson's opinion. That summary included medical records and evaluations of plaintiff's mental status which occurred after Dr. Akeson rendered his opinion. Moreover, the ALJ did not simply adopt Dr. Akeson's opinion wholesale when fashioning plaintiff's RFC. Although Dr. Akeson's opinion was substantially consistent with plaintiff's later medical records, the ALJ discounted Dr. Akeson's opinion that plaintiff faced only moderate limitations with respect to public interactions and instead precluded her from interacting with the public. The ALJ also precluded plaintiff from pace production work, which was consistent with Dr. Grewal's opinion that plaintiff was unable to perform at a consistent pace. The ALJ also limited plaintiff to only

occasionally making decisions or exercising judgment, and to jobs with only occasional changes in the work setting, limitations more restrictive than those found by Dr. Akeson and more consistent with Dr. Grewal's findings in those areas. That the ALJ's RFC determination does not precisely track either doctor's opinion is not a basis for remand, as the RFC determination, while it draws from medical sources for support, "is ultimately an administrative determination reserved to the Commissioner." *Winn*, 894 F.3d 982 at 987 (internal quotation marks and citation omitted). It is the duty of the ALJ to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline*, 771 F.3d at 1103. That is precisely what the ALJ did here. Under these circumstances, the ALJ did not substantially err in assigning less weight to those portions of Dr. Grewal's and Dr. Akeson's opinions which were not consistent with the record as a whole, nor did he err in accepting portions of their opinions to the extent they were consistent with the objective medical evidence and other evidence as a whole.

D. Subjective Symptom (Credibility) Determination

Plaintiff also argues that the ALJ erred in discounting her subjective complaints of pain. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218. I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416

F.3d 886, 889 (8th Cir. 2005).  When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322; 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).  "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004).  It is not enough that the record merely contain inconsistencies.  Instead, the ALJ must specifically demonstrate in his decision that he considered all of the evidence.  *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ properly evaluated plaintiff's credibility based upon her own testimony, the objective medical evidence of record, and her daily activities.  The ALJ summarized plaintiff's testimony regarding her daily activities and subjective

24

allegations of pain.  The ALJ was not required to fully credit all of plaintiff's assertions regarding her limitations given her activities, which included performing light routine household chores such as preparing simple meals, some housekeeping, driving, and laundry.  *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).  "Acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."  *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).  The ALJ also considered the fact that plaintiff received In-Home Assistance Services through December of 2017, but concluded that factor was not indicative of a disabling condition because her progress reports indicated that she retained good functioning despite her impairments.  (Tr. 19.)

Plaintiff's relatively normal physical examinations and objective test results, despite her complaints of disabling limitations, were properly considered by the ALJ as one factor when assessing her credibility and evaluating her subjective complaints of pain.  *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain).  Despite her allegations of disabling pain, the ALJ noted that MRIs taken of plaintiff's lumbar, cervical, and thoracic spine were "essentially unremarkable," with only mild abnormalities, and no disc bulges, herniation, or stenosis.  (Tr. 317, 329.)  On November 6, 2015, plaintiff saw Dr.

Kothawala complaining of pain in her right arm and ribs.  (Tr. 317.)  Treatment notes indicate that plaintiff "again request[ed] oxycodone-APAP, despite receiving some from her PCP."  (Tr. 318.)  Plaintiff stated her pain was 9/10 but walked with a normal gait and presented with a well-healed right thoracotomy incision and only mild tenderness at the spine.  (Tr. 319.)   Plaintiff was advised to continue her prescribed opioids despite "again requesting a higher dose."  (Tr. 319.)  On March 20, 2016, plaintiff presented at St. Mary's Medical Center complaining of acute pain and requesting Percocet, but CT scans of her cervical and lumbar spine were essentially normal, with normal disc spacings and facets in normal alignment, symmetric sacroiliac joints, and no acute osseous abnormality.  (Tr. 539.)  Plaintiff was counseled that she could not obtain an opiate pain prescription while under the care of another physician for pain management and was discharged with a morphine shot and instructions to follow up with her primary care physician.  (Tr. 539.)   Despite complaints of shortness of breath on March 23, 2016, a Doppler Echocardiogram of plaintiff's heart revealed normal or mild findings.  (Tr. 388.)

During a return office visit with cardiologist Charles F. Carey, M.D., on March 15, 2017, plaintiff reported that she was "doing well" and denied any chest pain, dizziness, or dyspnea.  (Tr. 374.)   Treatment notes indicate that plaintiff is a heavy smoker and continues to smoke.  (Tr. 376-77.)  She was advised to quit.  (Tr. 377.)  Plaintiff sought emergent care for chest pain on November 2, 2017, but test

26

results revealed only mild hyperinflation and otherwise normal findings.  (Tr. 571.)

She returned on November 26, 2017, again complaining of chest pain, but all

results and findings were normal.  (Tr. 587.)  Plaintiff reported being out of pain

medication.  (Tr. 588.)  Treatment notes indicate that plaintiff had "20 percocet

filled a few days ago."  (Tr. 588.)

Plaintiff had a follow-up visit with Dr. Keric on February 19, 2018.  (Tr.

770.)  She was observed to ambulate with a steady gait and required no assist.  (Tr.

770.)  Plaintiff was noted to smoke and advised to quit.  (Tr. 770.)  Plaintiff was

also seen by Lara Wiley Crock, M.D., on February 19, 2018, for pain management.

(Tr. 778.)   Plaintiff reported "passing out" after combining diazepam and

alprazolam.[3]  (Tr. 779.)  Treatment notes indicate that plaintiff "was revived in the

ED with narcan but then left AMA."  (Tr. 779.)  Plaintiff denied overdosing on

oxycodone.  (Tr. 779.)  Dr. Cook's notes indicate the following: "Her [primary

care physician] is no longer will to prescribe oxycodone.  She is very mad because

she has been on oxycodone for many years and she feels like her primary care

doctor has 'been trying to get her off it' for many years."  (Tr. 779.)   Plaintiff's

normal cervical spine radiographs were noted.  (Tr. 779.)   Physical examination

---

[3] At the hearing, plaintiff testified that she did not know why she passed out.  (Tr. 46.)

was within normal limits, although plaintiff was observed to be angry.  (Tr. 780-

81.)  Opioids were not recommended.  (Tr. 781.)

Here, after summarizing the objective medical evidence of record the ALJ

properly concluded that plaintiff's subjective complaints of pain were of limited

credibility because they were not supported by the objective medical evidence of

record, an important factor for evaluating a claimant's credibility.  *Stephens v.*

*Shalala*, 50 F.3d 538, 541 (8th Cir. 1995). The ALJ may properly consider a

plaintiff's failure to comply with suggested treatment, including failing to quit

smoking.  *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006).  A

claimant's misuse of medications is also a valid factor in an ALJ's credibility

determination.  *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1985) (claimant's

"drug-seeking behavior further discredits her allegations of disabling pain");

*Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) (claimant's misuse of

medications is a valid factor in ALJ's credibility determination).

Even if the ALJ could have drawn a different conclusion about plaintiff's

subjective complaints of pain, I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary determination.

*McNamara*, 590 F.3d at 610.  Here, the ALJ discounted plaintiff's subjective

complaints only after evaluating the entirety of the record.  Where, as here, an ALJ

seriously considers but for good reasons explicitly discredits a claimant's

subjective complaints, the Court will not disturb the ALJ's credibility

determination. *Johnson*, 240 F.3d at 1147. The ALJ evaluated all of the medical

evidence of record and adequately explained his reasons for the weight given this

evidence. Substantial evidence in the record as a whole supports the ALJ's RFC

determination, so I will affirm the decision of the Commissioner as within a

"reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir.

2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

### Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task

is to determine whether the decision is supported by substantial evidence on the

record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial

evidence is defined to include such relevant evidence as a reasonable mind would

find adequate to support the Commissioner's conclusion." *Id.* Where substantial

evidence supports the Commissioner's decision, this Court may not reverse the

decision merely because substantial evidence exists in the record that would have

supported a contrary outcome or because another court could have decided the case

differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner

v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of

record sufficient to support the ALJ's determination that plaintiff was not disabled.

Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed.  *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Sadika Hokic's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of August, 2020.